UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>    v.<br><br>DEAN ROBERT MOSTAD,<br><br>    Defendant-Appellant. | CR. NO. 2:16-43 WBS<br><br><u>MEMORANDUM AND ORDER RE: APPEAL OF MAGISTRATE JUDGE'S DECISION</u> |

        Defendant Dean Robert Mostad ("Mostad") was convicted on seven counts related to his mining operation on National Forest System ("NFS") land following a trial before Magistrate Judge Edmund F. Brennan. (Docket No. 98.) Presently before the court is defendant's appeal from his conviction.

I. <u>Factual and Procedural Background</u>

        Defendant began mining activities at the Freedom Moon Mining Claim ("Freedom Moon"), an unpatented mining claim[1]

---

[1] An unpatented mining claim is a particular parcel of federal land, valuable for a specific mineral deposit, for which an individual has asserted a right of possession. The right is restricted to the extraction and development of a mineral

1

located on NFS land in Sierra County, California, in June of 2008. (Docket No. 106 at 15:24-16:12.) Because the Freedom Moon is unpatented, the United States Forest Service ("USFS") retains jurisdiction to manage the non-mineral surface resources on the land. On August 13, 2008, the USFS approved an interim Plan of Operations that allowed defendant to conduct limited geologic sampling without use of water until October 31, 2008. (Pl.'s Ex. 5 at 1-2.) On March 24, 2009, the District Ranger approved a second interim Plan of Operations that allowed defendant to conduct geologic sampling activities while he obtained "required permits for a larger scale operation." (Pl.'s Ex. 9.) Defendant's permitted activities were limited to running samples through a portable dry wash vibratory separator with no use or discharge of water, and his authorization was set to expire on October 31, 2009. (Docket No. 107 at 246-262.) Pursuant to 36 C.F.R. § 228.8, USFS's authorization was contingent upon defendant's compliance with all the federal, state, and local permits required by other agencies. (Id.)

On June 16, 2009, defendant requested to amend his interim Plan of Operations to include wet processing. (Docket No. 107 at 270:10-272:6.) On June 25, 2009, the District Ranger denied the request. Defendant subsequently made a verbal request on July 14, 2009, to amend his Plan, and in response USFS approved another amended interim Plan of Operations. This plan (a) allowed wet processing by use of an existing wash plant and water from existing settling ponds in order to process samples

---

deposit.

taken in 2009, as long as no water would be discharged; (b) was contingent upon defendant's operations being in compliance with all applicable federal, state, and local requirements; and (c) amended the expiration date of the amended interim plan to October 15, 2009. (Pl.'s Ex. 14; Docket No. 106 at 46:13-48:8.)[2]

Forest service officers inspected defendant's mining site on October 21, 2009, and observed that the Downie River, a major tributary to North Yuba River, was turbid and that defendant was conducting a large scale surface mining operation that had not been previously authorized. (Docket No. 108 at 477.) On October 30, 2009, USFS conducted another inspection and, based on what had been observed on October 21, delivered a Notice of Violation and Cease and Desist order to defendant. (Pl.'s Ex. 16; Docket No. 105 at 50.)

On July 26, 2010, the United States filed an Information. (Docket No. 1.) On February 3, 2012, defendant filed a motion to dismiss. (Docket No. 28.) The magistrate judge denied that motion. On April 17, 2013, the United States filed a Superseding Information charging defendant with seven counts of violations under Title 36 of the Code of Federal Regulations. (Docket No. 42.) On May 20, 2013, defendant filed another motion to dismiss. (Docket No. 47.) In it he argued that because he was operating under an approved Plan of

---

[2] Defendant argues that the expiration date of October 31 remained in effect. However, the magistrate judge found "beyond a reasonable doubt that the defendant knew that the test holes were to have been filled and leveled prior to October 15" and explained that "the defendant was aware of the winterization requirement that he not operate after October 15." (Excerpts of Record ("ER") I at 9:6-10:12.)

3

Operations and the USFS never gave him notice that it viewed his activities as exceeding that Plan, it was a violation of his due process rights for the government to charge him criminally. He also contended that mining on NFS lands was largely regulated by 36 C.F.R. § 228, not 36 C.F.R. § 261, which contains the regulations under which he was charged. The magistrate judge denied this motion as well (Docket No. 50), explaining that he stood by his "earlier ruling that the defendant will be entitled to present as an affirmative defense all of the arguments that he would have made" in a challenge to the forest service decisions, thereby solving any due process issues. (Docket No. 105.)

A bench trial took place from September 23, 2013, to October 2, 2013. At the close of the case, defendant moved for a judgment of acquittal as to all counts under Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to sustain convictions for each of the counts. (ER II at 42; Docket No. 110 at 5-775.) The magistrate judge denied the motion. (ER II at 43; Docket No. 110 at 5- 803.) On December 9, 2013, the magistrate judge found defendant guilty on all counts. (Docket No. 61.) On February 22, 2016, the magistrate judge sentenced defendant to a term of twelve months probation. (Docket No. 98.)

II. Legal Standard

Jurisdiction to review the judgment of a magistrate judge is conferred by 18 U.S.C. § 3402. On appeal, questions of statutory construction and interpretation are reviewed de novo. United States v. Montes-Ruiz, 745 F. 3d 1286, 1289 (9th Cir. 2014). "The factual findings of the magistrate will not be

4

overturned unless they are clearly erroneous." United States v. Doremus, 888 F.2d 630, 631 (9th Cir. 1989)

Because defendant timely moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, this court's review of the denial of that motion is de novo. United States v. French, 748 F.3d 922, 935 (9th Cir. 2014). When assessing a sufficiency of evidence challenge, the court must consider the evidence presented at trial in the light most favorable to the prosecution. (Id.) It must then ask "whether this evidence, so viewed, is adequate to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).

III. Statutory and Regulatory Framework

The United States Mining Laws Act of 1872 reserved to "locators of all mining locations" the "exclusive right of possession and enjoyment of all the surface included within the lines of their locations," so long as they complied with federal, state, and local laws. 30 U.S.C. § 26. This "exclusive right" was modified and "limited by the Surface Resources and Multiple Use Act of 1955, which reserved to the United States the right to manage and dispose of surface resources on unpatented mining claims." United States v. Doremus, 888 F.2d 630, 632 (9th Cir. 1989). However, regulations passed pursuant to the Act may not "endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto." 30 U.S.C. § 612(b).

The Secretary of Agriculture has created regulations

governing the surface use of NFS lands in connection with mining operations. 36 C.F.R. §§ 228.1-228.15 ("the Surface Use Regulations"). The Surface Use Regulations set forth administrative processes aimed at minimizing the environmental impacts of authorized mining operations on NFS surface resources. 36 C.F.R. § 228.1. In addition, the Secretary of Agriculture has also created regulations prohibiting and assigning criminal liability to specific acts on NFS lands. 36 C.F.R. §§ 261.1-261.23 ("the Prohibition Regulations"). Pursuant to the Prohibition Regulations, "[a]ny violation of the prohibitions of this part (261) shall be punishable by fine . . . or imprisonment . . . or both pursuant to 16 U.S.C. § 551, unless otherwise provided." 36 C.F.R. § 261.1b.

IV. Notice of Non-Compliance

Defendant first argues that his conviction should be vacated because his activities were allegedly part of his mining operation and were within the scope of his Plan of Operations, the government could not initiate a criminal prosecution with respect to his mining activity without first issuing him a notice of noncompliance. Thus, according to defendant, his convictions for all counts should be reversed because the government violated his due process right to fair notice that his activities were criminal. The court disagrees.

Defendant's argument relies on the Surface Use Regulations which, as explained above, provide administrative procedures for regulating NFS surface uses. Defendant argues that under 36 C.F.R. § 228.7, he must have been provided with notice from Forest Service personnel and allowed to remedy his

actions.  However, nothing in the Prohibition Regulations
prohibits the government from filing criminal charges against
someone engaged in unauthorized mining operations without first
issuing an order of noncompliance.  If this were the case, miners
would be able to operate outside of their plans of operations,
potentially causing mass destruction, and USFS would have no
recourse until exhausting administrative remedies.  Such a system
would prevent USFS from fulfilling its duty of protecting forest
lands.

        Defendant had to comply with all USFS rules and
regulations, and in fact he had notice of the potential
consequences for failing to do so.  His March 2009 Approval plan
stated that defendant "shall comply with all applicable Federal,
State, and local laws, regulations, and standards . . . [and] any
unapproved deviation from the [proposed operation] may be
construed as unlawful, and the United States Forest Service may
take appropriate legal action."  (Pl.'s Ex. 9; Docket No. 107 at
257.)  While defendant is correct in arguing that USFS must issue
a notice of noncompliance when following an administrative
process and seeking an administrative remedy, Doremus 888 F.2d at
632, there is nothing to indicate that this would preclude the
government from filing criminal charges when a miner engages in
unauthorized activity.

        Defendant's mining operations were unauthorized because
they were beyond the scope of what had been in his approved Plan
of Operations and were performed after October 15, 2009, the date

upon which his authorization had expired.[3] During the October 21 inspection, USFS personnel found that Mostad was using the wash plant for mining, rather than the testing that he had been authorized to do by his Plan, which at that point had expired. (Docket No 108 at 541; Docket No. 110 at 650.) Accordingly, his acts were prohibited under the Prohibition Regulations. As such, they were chargeable at the time of commission, regardless of any administrative or civil remedies the Forest Service sought. Therefore, even if the court were persuaded that the procedures under 36 C.F.R. § 228.7 prevented the United States from filing criminal charges without issuing a notice of noncompliance, which it is not, defendant was not protected under this regulation because he was not operating under an active plan of operations, and USFS is required to serve a notice of noncompliance only when a miner is operating under a plan of operations. United States v. Godfrey, 112 F. Supp. 3d 1097, 1107 (E.D. Cal. 2015), aff'd 659 Fed. Appx. 928 (9th Cir. 2016)(explaining that because defendant did not have an approved plan of operations, "the Forest Service was not obligated to provide him with a notice of noncompliance prior to citing him for violations of Part 261.)

    Moreover, during trial the magistrate judge allowed the

---

[3] Although defendant contests this, the magistrate judge found "beyond a reasonable doubt that the defendant knew he was not authorized to excavate within Pond G [and] that the defendant knew that the test holes were to have been filled and leveled prior to October 15." (ER at 10.) The magistrate judge further explained, in his finding of facts, that defendant "was pushing the envelope and ultimately exceeding the limits of what he was authorized to do" and "violated the conditions that were in place." (Id. at 11) Additionally, as mentioned above, the plan's expiration date had been moved to October 15.

defense to present what it would have presented to the Forest Service in an administrative appeal. Thereby, defendant was provided his due process opportunity during trial. Defendant attempts to rely on United States v. Backlund, 689 F.3d 986 (9th Cir. 2012), in which the Ninth Circuit reversed defendant's conviction, finding that the district court had erred by precluding the defendant from challenging the agency's decision. However, during trial, defendant addressed the Backlund decision, and the magistrate judge fully complied with its holding by giving defendant the opportunity to raise defenses challenging USFS's administrative decisions. The magistrate judge simply rejected these defenses. As the magistrate judge pointed out, "the Backlund issue, that is the due process requirements[,] would be satisfied by allowing the defendant to present at trial whatever he wanted to present in the way of evidence and arguments as to a defense that--if he could, as to why the Forest Service was mistaken." (Docket No. 112 at 4.)[4] Accordingly, even if USFS failed to comply with certain administrative processes, such alleged errors have been cured because the magistrate judge allowed defendant to present his administrative defenses at trial.

V. <u>Activities Excepted from Forest Service Regulations</u>

Defendant next argues that his conviction should be

---

[4] Further, in Backlund the defendant had been operating under an authorized plan of operations, whereas here Mostad's plan had expired and thus he was no longer operating pursuant to an authorized plan. As such, USFS did not need to issue an order of noncompliance because there was no longer an active plan with which Mostad could comply. (Docket No. 108 at 458.) Accordingly, Mostad had no administrative rights, including no right to appeal any USFS decisions.

9

vacated because mining is primarily governed by 36 C.F.R. § 228, not § 261, and that mining activities are exempt from the Forest Service's special use regulations under Part 261. Accordingly, defendant argues, he cannot be convicted for violating §§ 261.10, 261.9, or 261.11. This argument is not persuasive, based on the Ninth Circuit's decision in United States v. Doremus, 888 F.2d 630 (9th Cir. 1989).

The defendants in United States v. Doremus attempted to make a similar argument, claiming that they were exempted from 36 C.F.R. Part 261 by 36 C.F.R. § 261.1(b), which states that "nothing in this part shall preclude activities as authorized by ... the U.S. Mining Laws Act of 1872 as amended." Appellants argued "that the effect of 36 C.F.R. § 261.1(b) is to exempt mining operations from the general prohibitions of Part 261, thereby limiting the regulation of mining operations to 36 C.F.R. Part 228." Doremus, 888 F.2d at 631. The Ninth Circuit rejected this argument, explaining that "[t]he references to operating plans in § 261.10 would be meaningless unless Part 261 were construed to apply to mining operations, since that is the only conduct for which operating plans are required under Part 228." (Id.) Further, 16 U.S.C. § 478 (1982), which authorizes entry into national forests for "all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof," specifically states that all people must comply with all rules and regulations pertaining to national forests. "This statutory caveat encompasses all rules and regulations, not just those (such as Part 228) which apply exclusively to mining claimants." Doremus, 888 F.2d at 631.

10

The Ninth Circuit went on to explain that "§ 261.1(b) is merely a recognition that mining operations may not be prohibited nor so unreasonably circumscribed as to amount to a prohibition." (Id.) Here, the United States did not attempt to completely prohibit defendant from mining. Instead, it issued criminal charges against him for engaging in unauthorized mining activities. Such enforcement is authorized and does not amount to a prohibition.

Defendant further argues that 36 C.F.R. § 251.50 provides that while generally "special uses" of National Forest System lands require "special use authorization," certain activities, including those "authorized by the regulations governing . . . minerals," are not "special uses" requiring a special use permit. Defendant was charged under section 261 for committing certain activities "without a special-use authorization, contract, or approved operating plan." Defendant argues that he cannot be charged under § 261 with using National Forest Services land without a special-use authorization because the activity he's charged with--mining--does not require a special-use authorization. However, defendant's convictions do not involve his failure to obtain a special-use authorization but rather his failure to obtain and adhere to an approved operating plan.

Defendant cites to United States v. McClure, 364 F. Supp. 2d 1183 (E.D. Cal. 2005), a non-binding district court case in which defendant was charged with violating 36 C.F.R. 261.10(k) for using National Forest Service land without a special-use authorization. The court held that defendant could not be

11

charged with violating this statute because his conduct did not require a special-use authorization. However, the section under which Mostad was charged, 36 C.F.R. § 261.10(a), prohibits certain activities when conducted "without a special-use authorization, contract, or approved operating plan when such authorization is required." Accordingly, persons can be charged under this section if they engage in activity that requires special-use authorization without having first obtained it or, as in the case of Mostad, if they engage in activity without an approved operating plan when such authorization is required. Accordingly, the fact that Mostad's activities did not require a special-use authorization is not sufficient to exempt him from 36 C.F.R. § 261.10(a).

VI. Insufficient Evidence

Appellant also argues that there was insufficient evidence to support convictions for counts one, two, four, five, six, and seven.[5] To succeed on the appeal, defendant must prove that, viewing the evidence presented to the magistrate judge in the light most favorable to the government, no reasonable trier of fact could have found for the government. See Nevils, 598 F.3d at 1164. The magistrate judge made extensive findings of fact in which he discussed documents, maps, correspondence, photographs, and stated that he had given full credit to the government's witnesses. (See ER I at 1-17.) The magistrate's factual findings "will not be overturned unless they are clearly

---

[5] Although defendant was also convicted of Count Three, he does not argue there was insufficient evidence as to this count.

erroneous." See Doremus, 888 F.2d at 631.

   A.   Count One

Count One charged defendant with causing an unauthorized significant surface disturbance on NFS lands in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10. Specifically, defendant was charged with destroying Pond G, also known as the "Habitat Pond." (Docket No. 42 at 106). The evidence at trial, as found by the magistrate judge, is sufficient to find that defendant was never authorized to excavate or in any way disturb Pond G, and that he nevertheless engaged in mining operations that destroyed the pond and the surrounding vegetation. Evidence included testimony from USFS personnel regarding conversations had with defendant informing him to not interfere with Pond G, as well as defendant's Plans and Approval identifying specific areas that were authorized for excavation and sampling, which did not include Pond G. (Docket No. 110 at 690:1-691:8; ER 1 at 3.) There was also overwhelming evidence presented by the United States that defendant's unauthorized mining operations destroyed the pond. Accordingly, the court finds that there was sufficient evidence for a reasonable trier of fact to convict defendant of Count One.

   B.   Count Two

Count Two charged defendant with damaging any natural feature or property of the United States in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.9(a). Specifically, defendant was charged with damaging and destroying riparian vegetation by pushing mining waste onto willow and alder shrubs and trees. The evidence presented to the magistrate judge indicated that

13

defendant's unauthorized mining operations destroyed much of the riparian vegetation that was off limits because defendant buried it with his mining waste. (ER I at 12.) Evidence was also presented, in the form of testimony of USFS personnel, which supported the allegation that defendant had been told that he could not disturb the vegetation near the pond. (Id. at 5.) Accordingly, the evidence was sufficient for a reasonable trier of fact to find that defendant was never authorized to excavate or even disturb areas containing riparian vegetation, and that his mining operations clearly did destroy such vegetation.

    C.    Count Four

    Count Four charged defendant with placing in and near a stream any substance which may pollute in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.11(c). Specifically, defendant was charged with placing mechanized earthmoving equipment that was leaking oil near the Downie River. In viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence that defendant placed oil near the river and there was a significant risk that the oil would pollute the river. Photographic evidence presented at trial showed that petrochemicals "were allowed to leak from the equipment directly into the water where it could enter the Downey River." (sic)(ER at 15.) As such, a reasonable trier of fact could find defendant guilty of this charge.

    D.    Count Five

    Count Five charged defendant with placing in and near a stream any substance which may pollute in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.11(c). Specifically, defendant was

14

charged with placing mining waste on top of riparian vegetation stands near the Downie River. At trial, evidence was presented indicating that USFS personnel warned defendant not to disturb the vegetation near Downie River, but that defendant continued to pile his mining waste directly on top of the riparian vegetation. The evidence as found by the magistrate judge was sufficient for a reasonable trier of fact to convict defendant of committing this offense.

  E. Count Six

  Count Six charged defendant with violating a term or condition of an approved operating plan in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(1). Specifically, defendant was charged with violating a term and condition of a special-use authorization, contract, or approved operating plan, including excavation of Pond G and the destruction of riparian vegetation stands. As discussed above, the United States presented sufficient evidence showing that defendant destroyed Pond G and the riparian vegetation. The magistrate judge found that Pond G "had been entirely excavated [and] [t]he alder trees have been dozed and the defendant had pushed the tailings into the riparian area." (ER I at 12.) Defendant's March 2009 Plan explicitly stated that he was allowed to excavate only the specifically marked test holes, which did not include Pond G. (Docket No. 106 at 170.) Accordingly, defendant's destruction and excavation of the pond was a clear violation of his approved Plan of Operations. This evidence is sufficient for a reasonable trier of fact to convict defendant of violating his plan and thereby convict him of count six.

F.  Count Seven

Count Seven charged defendant with violating a term or condition of an approved operating plan in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.10(l). Specifically, he was charged with violating a term and condition of a special-use authorization, contract, or approved operating plan, including failing to backfill and level mining excavations. Defendant's March 2009 Approval explicitly stated that "[a]ll excavations will be backfilled and leveled prior to October 15, 2009." (Docket No. 106 at 41; Pl.'s Ex. 9 at 2.) The magistrate judge found "beyond a reasonable doubt that the defendant knew that the test holes were to have been filled and leveled prior to October 15." (ER I at 10.) The evidence presented at trial was sufficient to show that defendant had not backfilled or leveled any of his authorized excavation sites and in fact was still engaged in unauthorized active mining on October 15, 2009. (ER I at 13.) As such, a reasonable trier of fact could find that defendant had violated an express term of his plan and approval and thereby convict him of count seven.

Accordingly, because the evidence before the magistrate judge was more than sufficient to convict defendant of all seven counts, the Forest Service was not required to provide defendant with notice and opportunity to cure, and the Forest Service regulations do apply to defendant's actions, the court will affirm the conviction.

The judgment is therefore AFFIRMED.

Dated: November 6, 2017

/s/ William B. Shubb

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE